Our next case for argument is 20-125B3, brought to you from Comcast. Mr. Holberg. Good morning, and may it please the Court. The Board erred in both its reissue and 101 holdings because it misunderstood the invention of the 326 patent. Rather than being about any number of users or any abstract idea, the invention of the 326 patent is about solving the upstream bandwidth problem associated with network-based speech recognition. So I'd like to focus on what prompt to surrender during original prosecution. Does your argument in this case depend on the same kind of reading into the language of the claims of the context of a cable system that we just heard about in the last argument? I wouldn't say that it necessarily relies upon that, Your Honor. Under Section 101, we in the appeal are focusing on ELLIS Step 1. And in that, the problem that was at issue and why there was an advance in the computer technology relates to this upstream bandwidth issue. And that is an issue that occurs on cable networks. The claims solve that issue, so in that sense, it's relevant that it's cable. But I don't think that it's required that the claims recite that result, just that they recite how you would get to the result of solving the upstream bandwidth problem. And everybody here has proceeded on the assumption that Claim 1 is representative for current purposes. And you haven't made an argument that the speech recognition engine is itself being claimed as new, as an advance, as arguably new. This could well be an off-the-shelf speech recognition engine that is put into this network. Yes, Your Honor, that's correct. It could be off-the-shelf, the speech recognition engine just itself. There was a dispute below about the claim construction speech recognition engine. It was kind of a fallback position on this reissue-recapture issue. Our position here, and we noted this in our brief, is if this court was to find that we surrendered a single-user configuration, it's over. We're no longer arguing that somehow that claim construction would mean that we didn't surrender anything. But coming back to that point, we did not surrender a single-user configuration during original prosecution. Can I just ask you about that piece? I realize we've just seemed to have jumped from 101 to 251. The doctrine, as I understand it, is that the so-called surrender can be either by amendment or argument. If that's right, then you can have a surrender by argument where there has been no amendment, where the patent applicant tells the office, Our claim does not include X, so does not include single users. There has never been a change in our claim. We haven't amended it, but that could be a surrender for 251 purposes, right? As a legal matter, yes, you can surrender by argument. Just by declaring what is not in my claim, without confessing that it once was, but it no longer is. Yes, Your Honor, I think that could constitute a surrender, but that is not what happened here. And one of the keys is that it needs to be a clear and unmistakable surrender that's happening. And I think that in this case, it is in no way clear that there was any surrender of any single-user configuration. As an initial matter, referring to the claim amendment, that would not constitute a surrender of any single-user configuration, because the claims, your very original claims before they were amended, they already required multiple user sites. And you can see this at appendix page 4262 in the preamble, the reference to multiplicity of user devices presented to a speech recognition system in a network supporting content delivery. That network will become important here in a couple minutes. But also lower down in the claim, if you go to the last limitation, the claim is already requiring said user devices, plural devices. You have an argument with, I want to overstate it, something real to it, that this preamble language, which never was removed, it was there from the beginning, had to be a limitation because it provided an antecedent basis for the said user provision. That's why I'm not focusing on the amendment, just on what you explained in distinguishing whatever that prior art reference was. Yes, so going to what we explained, if we go to appendix page 4266, we can see here, and I want to just make clear that we need to look at this original document, because the board, the parties, they've all emphasized things in different ways, but the emphasis in the original document is what matters. So what JA pages do you want? 4266. 42? 4266. At the bottom of that page, during prosecution, we say that Hauser teaches, and then in bold, adding a particular interface to a subscriber's terminal unit. So we're focusing on the invention in Hauser, that's dealing with doing this processing on a subscriber's terminal unit. And then we go a few lines down, and again, it says, for example, Hauser teaches, again in bold, a terminal unit, and then it goes on to explain what that terminal unit includes. It's basically all the processing stuff. If we go on to 4267, at the bottom of the first paragraph, we see that it says, all aspects of Hauser's teachings, the activities of receiving the utterances of the speaker, receiving the vocabulary data, and executing the speech recognition algorithm for controlling access to broadcast information, are necessarily performed on the, and again, bold, terminal unit. So that is what is being held out as, this is what Hauser is talking about, and then we go and we contrast that with what's in the claims. Right, but I think the hurdle you have to overcome is what comes next, right? Yes. In sharp contrast, claim one recites partitioning a receiver. And now this is underlined, so this is the point we are making, containing a multiplicity of speech channels from a multiplicity of user devices, and then it says, there's no disclosure or even notion in Hauser whatsoever of this claimed feature. Why isn't that a clear and unmistakable declaration? Our claim requires a multiplicity of users. So first, your honor, I would disagree with you that the emphasis here is actually emphasis indicating that this is what is being differentiated, because the emphasis here, this underlining, is just the underlining because it's an amendment. So it's showing what's in the amendment as newly added. So what else is, would this claimed feature be referring to in the next sentence? There is no disclosure or indeed notion whatsoever. So it is, in a sense, it is referring to the entirety of what was just quoted. But as far as what is it that's actually being relied upon, what is it that's being argued? It's actually, I think, the received back channel. And the reason I say that is because if you look at the last sentence on page 4267, it says because Hauser's teachings are concerned necessarily with the speech recognition processing being performed on the subscriber's terminal unit. Hauser's teachings is totally irrelevant to the claimed features of Claim 1. So again, it's differentiating terminal unit. And then we saw before in the claim at the end of the preamble that it's network that this is happening on. So that receipt is happening over a network. So there's a difference in place between where the processing is happening in Hauser and where the processing was happening in this claim. In Hauser, it was happening on the terminal unit. In the claim, it's happening somewhere else. That's why we have this information being received. I'll also point out that if we look down on 4268, about halfway, we see, again, we say, for example, Hauser does not disclose or suggest a received identified speech channel. And it's singular. It's not plural. We wouldn't have been saying that Hauser doesn't even teach 1 if the point of the distinction was that we were saying we're claiming multiple as opposed to 1. We were saying Hauser doesn't even teach 1. And the reason Hauser doesn't even teach 1 is because it doesn't teach this receiving. It doesn't teach receiving the identified speech channel. And that carries through to the other limitations here as well. When we go down, you can see what the bolding is on. I appreciate your arguments on this, and I think I have them well in hand. Do you have to win both the Alice argument and this one in order to prevail? Yes, we do, Your Honor. Then I think you only have four minutes left total, which includes your rebuttal time. You probably ought to pivot to the Alice argument. Yeah, so on Alice, Your Honor, here, as I was mentioning before to Judge Taranto, the issue is that the patent disclosed a problem in cable television networks, specifically upstream data transfer. The issue was that when you want to do speech recognition, there's two ways to do it. You can do it in a limited way using a low-powered computer. That was done in things like toys. This is all in the background discussion of the patent. Or you can do it in a more complicated way using very powerful computers, things that are housed at corporations, housed at the New York Stock Exchange. And we wanted to be able to do this powerful speech processing for cable users. And that would be done at a bigger place, like a cable head end. But that required transferring the speech from the user up to the cable head end. And that was something that was a big problem at the time, because cable boxes had always been designed for downstream. That's what matters. Push all the video, video, video, video. There was no need to really communicate back up, other than to maybe just a bite or two say, I'm buying that thing. I get exactly the argument you're making, and I see the improvement that you're articulating. The problem is I don't see that invention reflected in Claim 1. I actually see a patent-eligible invention in what you're describing. Now tell me how the limitations of Claim 1 are actually tailored to that invention. Sir, Your Honor, the limitations of Claim 1, and this is going back a little to the discussion in the earlier appeal, but require this transfer to be happening using two different paths. I mean, Claim 1 doesn't even require the head end. It's not limited to cable. I mean, it doesn't have any. I get exactly the problem you perceive, and I think the inventor made an actual inventive contribution as disclosed in the specification. But I see this particular Claim 1, this reissued Claim 1, as so broad that it isn't narrowly tailored to that invention to realize those benefits that you're describing. That's my problem. I'm just putting it out there. I understand, Your Honor. And I think that what makes this claim sufficiently tailored to the problem and providing the solution is the fact that it has this first network path that is used for transferring information from the first wireless device to the speech recognition engine, and then a different second network path that's used for effecting the information delivery back to the second device. And there was some discussion earlier about these different paths where they're coming up. I'll point, Your Honor, to Column 12. At first, around Line 30, and then again around Line 50, there's specific disclosure about the different ways that the information can be transmitted upstream. And if we look at, for example, Column 12. Yes, but these are very detailed descriptions that aren't contained in the claim, right? The claim is very much broader than what's there. Yes, Your Honor. The claim is not limited to those specifics, but I think that the claim does teach how you accomplish this result of getting rid of the upstream bandwidth problem because now you've got two separate paths. So you don't have to worry about the bandwidth problem anymore because you're on a completely different path. And I think that that is really all that's required because the complete result doesn't need to be taught, just how you do it. And I think the first and the second paths are sufficient to be getting around that upstream bandwidth problem. And if there's no other questions, I'll stop there. Okay. Thank you, Mr. Perry. Thank you, Your Honors. Very briefly on 101, this patent holder has a series of patents that have issued from related applications. Some have some problems, some have others. We've been litigating these cases for 10 years. We've brought 101 challenges against a very limited subset of the claims, particularly those, the reissue claims in the 326 patent. These are pre-ALICE reissue claims that essentially took a detailed specification and broadened them in a way that makes them preemptive, to use a word. I mean, Claim 1 really does boggle the mind a little bit about what it could cover. I do hear my friends saying, read it in light of the specification. You're about to hear a different argument in the next appeal or the one after that where they're going to say, don't read things in light of the specification. We're trying to be consistent here. On the claims, we think Claim 1 certainly has a 101 problem, and the Board correctly recognized that. Well, what about his argument that they have broken out the transmission into two separate network paths, and what that achieved was reducing the bandwidth problem? So two problems with that, Your Honor. First, Claim 1 does not require two separate network paths. Claim 12 does. Claim 1 says a first network path and a second network path. Yes, Your Honor, but they could be the same path. In a coaxial cable, data can run two directions in the same cable, and the Board recognized that, and they didn't challenge that on appeal. And again, Claim 12 requires where the first network path and the second network path are different as a separate limitation. This is something known in the art of networking that paths may follow the same cable. And that hasn't been separately appealed? It hasn't been separately appealed, Your Honor. But the Board made this point in its ruling on 101 that it's not— Okay, well, I don't totally follow that argument, and I don't want to make you repeat it. Assume for purposes of this hypothetical that I view the first network path and the second network path as two different networks. Yes, Your Honor. And now tell me what's wrong with their argument that, look, we said using these two separate network paths is going to solve the technical problem associated with bandwidth. Well, it doesn't say that respectfully. What the patent says is if the upstream data is important, then the problem with limited bandwidth will have to be solved. Will have to be solved. Not that this patent solves it, not that these claims solve it. It's in column 3, lines 4 to 7. If it is necessary to pass voice information from the subscribers to the cable head end, sufficient upstream bandwidth must be made available. So that's true, but it doesn't get resolved by these claims. And, again, the Board made no finding on that point because that argument was not actually presented to the Board. That's a factual question, I would think. You think what's a factual question? As to whether the two network paths have that advantage. It's certainly not claimed. It's certainly not disclosed. They put in no expert testimony on it. We only have the attorney's argument about it in this court, and no findings from the Board. And are you saying that the patent itself doesn't anywhere suggest that the two network paths achieve the improvement of reduction in utilization of bandwidth? That is correct, Your Honor. By itself? By itself. The improvement that is recited in the patent and that is claimed in some of the other patents, excuse me, the improvement that is recited in the specifications and that is claimed in some of the other patents is locating the speech recognition engine away from the set-top box and into the center of the network, which requires additional bandwidth, but that nothing in the patent supports to solve the upstream bandwidth problem. Your Honor, on the recapture question, Judge Toronto went exactly to the right place. And here... So what portions of... I want to put aside the amendment, okay? What portions of the discussion, commentary, argument by Promptu at the relevant pages, the 42-66 and following, say with clarity, our system does not include serving just one user? So there's two points, Your Honor. One is an affirmative and one is a negative. The dog didn't bark in the night. The affirmative is the passage at the bottom of page 4267 where the applicant describes the amendment, adding the multiplicity of speech channels from a multiplicity of user devices into the claim, and the very express statement that, quote, there is no disclosure or indeed notion in Hauser whatsoever of this claimed feature. But the argument on the other side, I think, is that the underlining is a little bit misleading visually. It was just replicating the underlining that comes with the addition in the claim. So it's... That undermining is not itself telling you, that's the claimed feature I'm focusing on. Rather, it's this partitioning a received back channel containing. So how do you get to the next step? That's the dog that didn't bark in the night. The language was in the preamble, but the examiner didn't object to the preamble under Hauser. The examiner listed out his rejections to every single clause independently. We lay this out in a red line in our brief as to what the grounds for rejection are over Hauser. And as to this clause of the claim, he had Hauser. As to the preamble, he had nothing. The patentee did not argue that the preamble was limiting. This court has a lot of 251 cases that says, you know, if you think it's clear already, you have to argue clarity. It's 112 cases. They didn't argue that. Rather, they added this to the claim. So this claim without the underlying part stood rejected over Hauser. That's the important point. I used too many words to get there. Well, the preamble has to be limiting because the claim refers to the antecedent basis. That's the preamble. The idea that the examiner may have missed that or not caught it doesn't, to me, amount to clear and unmistakable. Let me go there in a simpler way, Your Honor. This claim at the bottom of 4267 without the underlying part stood rejected over Hauser. The addition was made to overcome that rejection and the explanation for that addition, so they are explaining the underlying part, was that Hauser does not disclose this claimed feature, that is, the user devices in the claim. A person of skill reading this as a disclosure to the public would understand that. And I heard my friend's arguments about the terminal unit when we skipped over a word because the next sentence starts further because Hauser blah, blah, blah about the terminal unit. These features are not. So there's two different arguments made here. We agree they have disclaimed the terminal unit implementation, but that's a different issue. They've also disclaimed the non-multiple-user, the single-user implementation, as the Board recognized in parsing through a series of events. And then, of course, in the reissue, that very part of the claim, the claim they had amended to overcome Hauser, was then taken away, creating a problem under Hauser, as we just discussed, but also creating a recapture problem, we believe, by getting back that which they had surrendered in order to establish the allowance. Unless there are further questions, we will submit on the second appeal. Okay. Mr. Goldberg. Just quickly, Your Honors, I want to first touch on this issue about the problem. He was referencing that in Column 3, it just says, you know, if this is a problem. It clearly was a problem. The patent goes on to explain throughout Column 3 how it's an issue, even getting down to the level of talking about how many kilobits per second are being transmitted. And the patent also specifically states that it solves the problem. At the bottom of Column 49, it specifically addresses the upstream issue again, and says, the application of this methodology to cable television networks with extremely limited upstream communication bandwidths enables voice recognition over cable television. On the reissue issues that were being discussed, I want to note that the examiner I think clearly thought that this was limiting. If you look at appendix page 4230, the examiner says that Hauser teaches, and then he puts the preamble, and then he puts the limitation, and then he puts his sights to Hauser. There's no separate Hauser teaches for the partitioning limitation. The only Hauser teaches is up at the preamble, so it's the entirety that the examiner was saying was taught by Hauser. And then lastly, on this sentence that was referred to about further in the applicant's remarks, if you look at the very next sentence, it says that, for example, what's not disclosed,  that is the first one in the claims. So I don't think that the further is referring to anything else. Unless there's any questions, my time's up. I thank both counsel. This case is taken under submission.